Thank you, Your Honor. Good morning. May it please the Court, I'm Brent Blakely, and I represent Appellant Spy Optic. The question before the Court today is whether personal jurisdiction exists in California when the defendant, which operates a highly interactive website, markets, sells, and ships counterfeit spy optics sunglasses into the state of California, harming consumers in California by creating market confusion in California. Making a profit from those sales in California, and that these activities are systematic and ongoing. In the Court below, we argued two tests for personal jurisdiction. The traditional purposeful availment, created by minimum contacts, and purposeful direction, called an effects test. The District Court's first error is when it held that, in all causes of action sounding in tort, the Court uses the effects test, not the purposeful availment test. In other words, a purposeful availment is only for contract cases. This is not the law. Contrary to this holding, purposeful availment and purposeful direction are not mutually exclusive, nor has the U.S. Supreme Court ever made them so. The Eleventh Circuit was confronted with a very similar situation seven years ago in Louis Vuitton v. Mosseri, where you had an online counterfeiter selling goods into Florida. The Eleventh Circuit held that the effects test does not supplant the traditional minimum contacts test for purposeful availment, applicable in contract and tort cases alike. In other words, the effects test just simply provides an additional means, unavailable in contract cases, of determining personal jurisdiction. Now, that is the law in most of the other circuits, well, actually, all the other circuits that I've seen, including the Sixth Circuit. The Calder's test is particularly appropriate in cases involving the publication and dissemination of information that results in harm to a specific individual. Traitor infringement is an entirely different animal. As the Supreme Court has instructed, the Lanham Act's general concern is with protecting consumers from confusion as due to force. Thus, in trademark infringement cases, it is the general rule that a claim for trademark infringement takes place where the infringing sales occur. What showing did you make as to their level of sales into California and California consumers? Your Honor, we made allegations that they were making sales into California, and they themselves provided an affidavit saying that they made sales into California. And what did it say about the quantity or volume of those sales? Well, they said it was 5%, and that's why we said if the court is going to buy that, or at least hold that there's a question there that we should be allowed to do jurisdictional discovery to test it. And 5%, what did that mean in terms of dollar volume sales? That's why I asked for jurisdictional discovery. We do not know. But I think that it doesn't matter under Keaton v. Hustler. In Keaton v. Hustler, Your Honor, only a very small amount of the sales were being made into New Hampshire. But the U.S. Supreme Court said that because the Hustler's activities in New Hampshire was systematic, ongoing, selling its magazines into the state of New Hampshire, that personal jurisdiction existed. It doesn't matter if it's 5% of the state, and I'm going to get to that as far as the focusing, which I think is the court's second error. But I don't think whether it matters it's 5% or 10% or 20%. If they were selling exploding sunglasses into the state of California, I don't think there would be any question that there would be jurisdiction in California because it causes harm to consumers in California. That's what happens in trademark infringement. When they sell their goods in California, they are harming consumers in California. And again, I'll go right into it. That's really the second issue there. You see Judge Gould wrestling with that in his dissent in the AMA decision. What he states is actually true. It says, it is well established there is no form-specific requirement. So that was the second error where the court said that in order to be able to bring in a trademark infringement claim in California, that this online retailer had to be specifically directing its activities towards California consumers as opposed to just the nation in general. We know from Keaton v. Hustler that that's not the law. Again, in Keaton v. Hustler, the Supreme Court stated that even though the sales into New Hampshire were a minor part of Hustler sales across the nation, there was still jurisdiction. There was no form-specific requirement in that it subjected defendants to jurisdiction in that case, just like it should in this case. And the defendants can't get around this now just because they're selling their goods through a highly interactive website or marketplace, which is really just the same as a brick-and-mortar store in downtown LA. And if this ruling is allowed to stand, it's going to create horrible precedent in the Ninth Circuit, Your Honor. So, for instance, if a defendant sells counterfeit products through its website, Amazon, or some other platform, for instance, fake iPhones from Apple, fake Walt Disney toys, or fake Golden State Warrior t-shirts, Apple, Walt Disney, in this case, SpyOptic, is always going to be required to sue the infringer in the infringer's home jurisdiction in order to protect the California consumers from confusion. And what if the infringer's in China where there is no remedy? It's just a horrible precedent. Is it your view that if they sell on the website and they make sales to people in all 50 states, that they're subject to suit for infringing activity then in all 50 states? Could this suit, for example, have been brought, say, in Nebraska? I think if it's a one-off sale, and there's case law on this, if it's a one-off, you've got a highly interactive website. Actually, some courts have said one sale does it. But I think you look at the facts of each case. But if it's a highly interactive website... Suppose it's 2% per state. Well, we have 50 states that have 2% per state. Can you frame the infringement and just pick your state? Yes. Your Honor, and it seems like ages ago, I remember arguing this in Downing v. Abercrombie & Fitch in the context of Venue, where Abercrombie & Fitch was distributing its catalog through all 50 states. And Abercrombie had argued, well, the plaintiffs are all... They're a bunch of relocated in Hawaii. You can't be suing in California. And this court held that, no, you can sue wherever that magazine is distributed. What really you do is you look at, just like in Keaton v. Hustler, the systematic, ongoing contact with the state. They are marketing and selling and shipping their goods into the state of California. This is not a one-off situation where plaintiff creates the contact by buying something off of eBay and saying, ha-ha, we've got jurisdiction in California, where plaintiff created that contact. No, Your Honor, this is a situation... ...that were made by the plaintiffs. No, Your Honor. Okay. No, Your Honor, we're looking at, really, their own affidavit that says that they, you know, in their website, that shows that they systematically sell goods into the state of California, Your Honor. And there's no question of that. They've admitted to that. And even a smaller percentage of sales were involved in the Keaton v. Hustler in New Hampshire. As you can imagine, New Hampshire is a tiny state. You know, and the Supreme Court held jurisdiction in that situation. You have only a minute left. You might want to save that for rebuttal. Well, I couldn't say it right now, Your Honor. I mean, I think that this is a very important issue that companies, and I represent a lot of them, you know, in California and in this circuit, need a rule that allows them certainty that they're going to be able to protect consumers in the state of California for infringement that is occurring in California. An easy way for the court to avoid that would be to simply send us back and allow me to do jurisdictional discovery. I used to work for the Fifth Circuit. I know that's an option. But I think this is a very important issue that California companies wanting to defend their marks and consumers from confusion in the marketplace need a ruling from this court that's in line with similar to what the Eleventh Circuit did in the Louis Vuitton case. All right, your time has expired. I'll give you a minute for rebuttal, but we'll hear now from Mr. Kubik. Did I pronounce that correctly? Thank you very much, Your Honor. Yes, Your Honor. You may proceed. Good morning, Your Honors. Andrew Kubik for the Defendant Appellee, Area Trent. May it please the Court. The issue before this Court is whether California has specific jurisdiction over Area Trent. Now, I believe my opponent misapprehends the current state of law in California. To establish specific personal jurisdiction in California, the defendant must purposely direct his activities at the forum. The jurisdiction must be based on the defendant's contacts, not the plaintiff's contacts, the defendant's contacts with the forum that are related to the alleged claims. This means that the forum contacts must be the but-for cause of the plaintiff's alleged harm. And lastly, the exercise of jurisdiction must be reasonable. He says that 5% of your sales go to California consumers. That seems like a pretty significant volume. What is that in terms of volume numbers of product or dollars? Your Honor, I don't know the specific dollar numbers or the volume figures, but I do want to correct that fact because it is incorrect. The sales of all products that Area Trent sells to California is 4.7% of gross sales. The sales of SpyOptic products to California represents .0018%. Now, if we're saying that the sales of SpyOptic products are what created the necessary contacts for purposeful direction and express aiming, and under a specific jurisdiction, the contacts that are alleged to create jurisdiction have to be related to the underlying claims, we're only looking at the sales of SpyOptic products, not the sales of other products. The other products are unrelated. Where in the record can I find the percentage that you just gave? It's in the declaration of Eric Casper, Excerpt of Record 142, paragraph 9 of his declaration. Returning to the purposeful direction element, my opponent contends that the purposeful availment test should apply not purposeful direction, but the state of law in this circuit, as discussed in Axiom Food at 1069, and again most recently by this court in AMA Multimedia v. Monarch, is that in a tort case such as this one, trademark infringement, unfair competition, we apply the purposeful direction test. Now that test specifically has three of its own factors, an intentional act that is expressly aimed at the forum, and that causes harm that the defendant knows is likely to be suffered at the forum. On the expressly aimed, AMA says we held that a website's operators can be said to have expressly aimed at a forum where a website with national viewership and scope appeals to and profits from an audience in a particular state. Now it may be a small percentage, but isn't it true that you have a national viewership and scope and that you are appealing to and profiting from an audience in the state of California? No, I do not believe that's the case, your honor. California has 40 million people. The sales of spy optic products to sunny California, where people would presumably buy sunglasses, is .0018% of the website's sales. That means that, and only 5% of all the other products are sold in California, that means 95% of their sales come from other states. I believe the case that AMA was referring to was Maverick's Photo. In that case, there were very specific California contacts that supported express aiming. The content itself was Hollywood gossip. The defendant in that case had contracted with numerous website providers in the state, including a mobile website service, and it advertised specifically to Californians for jobs and products, and I believe rental housing or something like that. And so there was very clear evidence of express aiming towards the California market. Here, what we have is a website in Ohio, and a handful of Californians went searching and somehow found this website in Ohio, and that person in Ohio shipped products to California. It's not in the record, but by Google Spy Optic, and I clicked through the first 10 pages of my Google results, Area Trend's website does not show up. So someone has to really go after this website, try to track it down. Maybe they know it from a previous purchase or from a referral of a friend, but there's nothing for someone sitting in California to do to be able to really be targeted by this website. And as Mr. Casper declares in his declaration, they don't do anything to target California. And even if they did do some advertising in California under AMA Multimedia, that wouldn't be enough, because if they did the same kind of advertising to everywhere in the country, for example, in AMA Multimedia, they recognize that, sure, they have 20% of their viewership in the United States. The largest viewership of the entire world was in the United States, but they also have viewership in Germany. And they don't treat the Germans any different than the Americans. They try to grow their business equally around the world. Here, we don't even have that, because there's nothing that targets California. But the point is, there's no express aiming here, because there's nothing in the record to support that the website is specifically tailored like it was in Maverick's photo to target California. And the sales numbers show that. What's your response to his reliance on the Keaton case? Well, I think that that's an outdated case, Your Honor. That's from 1980. It involved magazines. The express aiming element has changed since Walden did the Fiore 571 U.S. 277 2014. As the Axiom Court recognized, after Walden, individualized targeting is no longer a relevant inquiry on the purposeful direction test. And so we've had a little bit of a shift in law. And I think to rely on outdated authority would be improper here. We have direction now from the Supreme Court after Walden, which Axiom has picked up on. And again, I would submit that AMA Multimedia also has discussed that you can't look at the plaintiff's contacts and ascribe those contacts to the defendant. You have to specifically look at the defendant's contacts. Now, what are the only contacts we have here? Well, down below, plaintiff argued that because they're located in Carlsbad, California, and because a handful of people bought these sunglasses in California, those contacts are sufficient and must be ascribed to area trend. And therefore, there is personal jurisdiction. Well, we know that after Walden, and specifically after Axiom, the Ninth Circuit as counsel, you cannot look to the contacts of the defendant. Because the reality is, if the defendant were to move to Montana, for example, there would be nothing left of that contact in California. So there would be no jurisdiction. So we need to focus on the contacts of area trends. The district court cited a case and used the parenthetical, selling more products to consumers in California than any other state. Is that the test, that you can only bring it in the state with kind of the focus or has the largest block of sales? And if another state, even if it has 10% of the sales, there would be no jurisdiction in the state with 10% of the infringing sales. I don't think it's a matter of sales, Your Honor, because like I said earlier, California is 40 million people. You're almost always going to have a lot of sales in California and a lot in Texas. I think it will depend on the product. There might not be demand for snowblowers in California or snowblowers in Florida. So I don't know that sales figures are in. I think you have to look at the contacts that the plaintiff, that the defendant creates with that form. Specifically, do they have maybe sales reps in that form? Do they have a fulfillment center, a distributor of some kind? No doubt someone like Amazon would have the necessary contacts, but a website in Ohio that does no geo-targeted advertising specific only to California, that does very minimal sales to California. There's just not enough facts in this record to support dragging area Trump to California to defend this case. And on the issue of jurisdictional discovery, I would only submit that unlike the de novo standard applicable to the denial of jurisdiction, it's an abuse of discretion standard. The district court looked at the record and there's no abuse of discretion here. The only thing that plaintiff requested down below is for additional discovery related to the 4.7 percent sales figure. As I just discussed, that's irrelevant to this analysis. And the additional 10 things that the defendant requested in the appellate brief should be disregarded because that was not requested down below. And so the court decided the issue based on the request made in front of it there, not what's been made up here. And that's all I have. All right. Thank you, counsel. I'll give one minute in rebuttal to Mr. Blakely. Thank you, Your Honor. I'll be very quick. Keaton v. Hustler is still good law. The 11th Circuit, not only is it good law, it's controlling law. The 11th Circuit relied upon it in its Louis Vuitton decision. The 2nd Circuit relied on it in the decision that I cited in the brief. Indeed, Judge Gould cited to Keaton v. Hustler in his dissent in the AMA case, which, by the way, is factually distinguishable. Basically, the defendant has made a convenient catch-22 argument. They don't specifically focus any state. They focus the United States. Therefore, they can only be sued where their headquarters is. That's basically their argument. And that argument is wrong under Keaton v. Hustler, which, again, is controlling law. And also, neither Schwarzenegger or any other decision in this court has said that you do not look at minimum contacts in connection with this type of situation. Even the court in Maverick said that, you know, we're not, you know, this is a sticky situation when you're dealing with websites and online sales. All right. Thank you, counsel. Thank you so much, Your Honor. The case just argued will be submitted.
judges: Bea, Thapar, Collins